Good morning, Your Honors. May it please the Court, my name is James Lopesense and I represent Mr. James Miller. In this habeas case, challenging a State court conviction, the biggest issue in the State court trial was whether or not Mr. Miller really had been threatened by Mr. Parazonin with a bat. That was the central issue in the trial. And the central claim, the biggest claim of ineffective assistance, is that the trial lawyer did not present the bat in evidence. The prosecutor in this case... Did someone testify that a bat was used? Mr. Miller did. Yes. Yes. So there was evidence in the record that a bat was used. Yes. There was evidence in the record that a bat was used. And the prosecutor conceded that if a bat had really been used, the prosecutor said, then probably he would have been legally justified in his conduct in brandishing the gun and therefore wouldn't be guilty. The prosecutor made fun of the fact that this is a disappearing bat. If there's really a bat, where is it? The defense attorney's last words in closing argument were, the threats from Mr. Parazonin with the bat justifies what Mr. Miller did. While there was a significant amount of agreement, there was agreement that the so-called victim had blocked Mr. Miller from exiting his own home, there was agreement that the gun had never been pointed directly at the alleged victim. There was agreement that the alleged victim took the gun away from Mr. Miller without a problem, but there was great disagreement about whether or not this bat really existed or not. Are you saying that the district attorney argued that that was an issue of fact, that they should resolve against the defendant? Yeah. The district attorney said, the defendant's a liar. This is the only available story he could possibly come up with at the last moment to explain why he did this with the gun. And so he's come up with this complete lie that there was a bat. If there was a bat, why didn't the police produce this bat? They didn't see it. He called Officer Griffey in rebuttal to say, I never saw any such bat. He cross-examined the defendant and said, if there was a bat, how come you didn't mention it in your statement? Mr. Miller said, well, in my statement, I didn't actually use the word bat, but I did say that Mr. Parazonin threatened to cave my face in or crush my head in. I just didn't mention the implement that he did it with. The explanation which the trial attorney eventually came up with as to why he didn't present this bat in evidence was that, well, actually, I was going to, but Mr. Miller told me that, you know what, I lied and made up this whole bat story, and it's a lie. And the trial attorney has sworn in an affidavit that he went over with Mr. Miller, I have an ethical obligation, I can't present perjured testimony. He claims that he got Mr. Miller to assure him he would never mention a bat. He said, I'll never question you about a bat. That will never happen. You understand we can't do that. But as the district court pointed out, the trial attorney did the exact opposite of what he claims he was going to do. He did deliberately ask a series of questions about a bat specifically, and he did deliberately argue to the jury in the end that it's because of what Mr. Parazana did with the bat that Mr. Miller is innocent. Mr. Miller asked for an evidentiary hearing in State court and didn't get it. He asked for an evidentiary hearing in Federal court, and initially, Judge Kuenhauer said, grant it. Initially, Judge Kuenhauer said he meets the requirements for having an evidentiary hearing. He cited the correct rule. The correct rule, which this Court has, I think I cited five or six cases where this Court has reversed the district court for failure to hold an evidentiary hearing when these two criteria are met. The allegations made by the habeas petitioner, if true, entitle him to relief. Judge Kuenhauer initially said, these allegations, if true, do entitle him to relief. He meets that. And there hasn't been a second criterion. There hasn't been an evidentiary hearing in State court. The State court has not found the relevant facts. Judge Kuenhauer said initially that criteria is met. Therefore, he gets an evidentiary hearing. His claim is not palpably frivolous. The district court noted that the trial attorney's explanation for his not presenting the bat was totally inconsistent with his actual behavior at trial. And he initially said, I'm going to grant an evidentiary hearing. Then he reversed himself on a motion for reconsideration. And on reconsideration, he said, I have to defer to the State court's finding of fact. But the State court never made any findings of fact. And I'm a little, you know, I submit that apparently he believed that a conclusion that the Strickland criterion, the second Strickland criterion of prejudice wasn't met was a finding of fact. And that somehow he had overlooked that the first time, and now he thought, gee, I have to defer to that because that's a finding of fact. But he didn't, in fact, defer to anything. He made his own independent findings. Judge Kuenhauer didn't do anything at all. He just said, I have to defer, case over, you don't get an evidentiary hearing, habeas dismissed. I cited a few cases like Williams v. Taylor where the United States Supreme Court in this exact type of situation said, yes, the Virginia Supreme Court found that while there was deficient conduct, there wasn't prejudice from that deficient conduct. And Justice O'Connor for the Court went on to say, if, she said, if the Virginia Supreme Court had made a finding of fact, we'd be obligated to defer to it. But they didn't. And prejudice isn't a finding of fact, and we don't defer to it, and it's wrong, and under the habeas standards, this man gets a new trial. The district court relied upon a case called, one of this court's cases, Taylor v. Maddox, which doesn't make any sense at all. In Taylor v. Maddox, it says if the state court makes a finding of fact, you have to defer to it. That's true. In that case, there was a credibility contest between a police officer and a defendant, and the state court judge said, I believe the police officer. He said, beyond reasonable doubt. I don't believe the defendant. The defendant is lying. What evidence would have been presented had Judge Kuenhauer permitted an evidentiary hearing? Well, it would have asked Mr. the trial attorney, Mr. Danko, did you go, as Mr. Miller and Ms. Oxford both said, did you go to the house and look at the bat? Did you tell them, as they both say, that this bat is great evidence for self-defense? Wasn't it clear without the evidentiary hearing that, in fact, he didn't offer evidence that there was a bat? Right. So why didn't you? And if he says, you know, I think that this evidentiary hearing, one distinct possibility is that the trial attorney will claim the Fifth Amendment privilege and refuse to answer any questions, because there's such a strong inference that he's committed perjury in Federal court. And if he – I've thought about the kinds of things he could say. In some respects, the smartest thing he could say is, you know what, I got confused. I confused Mr. Miller's case with somebody else's case. It was somebody else who told me that he'd made up the story. It wasn't Mr. Miller, and you're right, and I forgot. Because anything else he says, he's sort of toast. I mean, he either knowingly suborned perjury and lied to the jury at the trial, or he submitted a false affidavit to district court. So under your precedence? Would the bat ever get into the hearing at this point? Would it get into the hearing? Yeah. At this point, I mean, I think they still have the bat. Okay. Well, that's the question. Has it ever been fingerprinted, or do we know that it can be linked with the victim in some way? I don't think we know that, no. We don't know. I don't believe it's ever been fingerprinted. And, of course, I just want to focus there on sort of where the burden of proof is at a trial and stuff. Well, I understand that. But in determining whether there's any potential prejudice, we have the evidence that he said there was a bat, and that's what it was that he threatened to cave my face in with. And you have witnesses saying, well, we didn't see one, and you have the police report saying it was never mentioned. And I'm wondering just the presence of a random bat that hasn't been fingerprinted to link it. I mean, there are thousands of bats all around the world. You know, you could just bring one in. But I think with all due respect, Your Honor, you are looking at it from the point of view as can the bat prove his innocence? No, I'm looking to whether it could possibly have made any difference in the trial. Well, the prosecutor said if there really was a bat and this really happened, then he would have the defense of self-defense. And so the prosecutor said there was no bat, so he's obviously a liar. If you had the bat, that would have been. There was testimony regarding both ways. There was testimony regarding whether there was a bat, and there was testimony regarding whether there wasn't. So how is there prejudice for failure to actually admit into evidence a bat? If it's not linked specifically to that. Because the absence of the bat in the prosecutor's view and in the jury's view proved that Mr. Miller was a liar. But the point I'm trying to make is that I guess my concern with it is really that if you just brought in – I mean, somebody in this building probably has a bat. We could bring it in and say, you know, here's a baseball bat. But if it's not specifically linked, how is that going to? Because the bat shows he didn't lie about the presence of a bat. He didn't make up the whole story. It doesn't. That's my point. Unless it is fingerprinted to prove that the victim touched it or that somehow someone identifies it as his special Louisville slugger that he's carved his initials into, they could think he's lying not only that way but physically. They could think, but that's exactly the point. They could think he's still lying. But they wouldn't say, we know he's lying. There's no bat. They could have believed Mr. Miller. And we only need to show a reasonable probability that they might have believed Mr. Miller and they might have believed Ms. Oxford, or a reasonable probability that they would have had a reasonable doubt. That's all the habeas petitioner has to show to win on this claim. And Judge Kuenhauer did say, before he decided he had to defer to a finding of fact that didn't exist, he said, if this man's allegations are proved to be true, he is entitled to relief. And that's what the district court judge said the first time he ruled. Thank you. May it please the Court. My name is Greg Rosen. I'm an assistant attorney general and I represent the Respondent in this matter. Counsel, let me start by asking you the thing about your side of the case that concerns me. The second order issued by the district court at Excerpts 162, the court says that he can't second guess the state court's factual findings unless he finds that the state court's factual findings were objectively unreasonable. And that's true, but what are the factual findings that he's referring to there? Your Honor, the court of appeals, in contrast to what counsel indicated, made a number of factual findings in making its determination on the merits in Mr. Miller's case. The court of appeals found, as to the bat, for example, that counsel has discussed, the court of appeals found that even if a bat had been admitted into evidence, again, assuming arguendo, the bat had been admitted into evidence, this wouldn't change the fact, Your Honor, that Miller hadn't mentioned the bat to the police  The court of appeals found that the bat had been admitted into evidence. Wait a minute. That's not a finding. That's legal reasoning about whether it was prejudicial. Is that a factual finding? I believe it is, Your Honor. It's a factual determination which led ultimately to the legal conclusion of lack of prejudice, the second prong of Strickland. Well, the facts are that there was testimony on the other side that there was no bat. That's a fact. And the fact was that it wasn't in the police report. Those are facts. But whether there's prejudice, whether a jury would have viewed the case differently, particularly in light of the prosecutor's argument, that's not a factual finding, is it? I believe it is, Your Honor. The court of appeals makes factual findings all the time. That's why this Court entered its decision in Williams v. Rose and Pollard v. Galazza when it held that an appellate court's findings of fact are entitled to the same presumption of correctness as a trial court's findings of fact. I think we're not communicating. What is your best case for the proposition that a state court determination that counsel's acts or omissions were not prejudicial is a finding of fact to which we would defer unless clearly erroneous? Specifically in that, it's not the principle that fact findings have to be deferred to that I'm asking you about. We all agree that that's true. What I'm trying to figure out is whether a state court's holding that something was or was not prejudicial is a factual finding. Well, I would agree with you that if a state court – if the court is talking about a legal conclusion, in this particular case, the court of appeals decision that Mr. Miller was unable to establish prejudice, the second prong of Strickland and resolved the case on that basis, the holding – you're right, Your Honor – the holding itself, the legal determination is not a finding of fact. But I would respectfully submit, Your Honor, that the court of appeals in this case, both on direct appeal and during the pendency of Mr. Miller's personal restraint petitions, did make findings of fact. So you make a distinction between the preliminary determination as to whether or not it would have made a difference as a finding of fact and then the legal conclusion as to whether that results in prejudice. That's correct, Your Honor. And the court asked me specifically for my best case. I refer, of course, to this Court's holding in Lambert v. Blodgett. And where I was going to begin my analysis, and I think this would aid the Court's decision-making as well, is that this Court should follow the holding of the U.S. Supreme Court in Schriero v. Landrigan and find the district court here did not abuse its discretion when it denied Mr. Miller an evidentiary hearing. As this Court is well aware, Landrigan stands for the proposition that unless Miller could show that the court of appeals decisions in his case were objectively unreasonable, he is not entitled to an evidentiary hearing. Landrigan holds that if the record refutes the Petitioner's factual allegations or otherwise precludes Federal habeas relief, the district court was not required to hold an evidentiary hearing. In this particular case, Landrigan has changed the landscape, or the standard, for an evidentiary hearing to be conducted. The colorable claim test is no longer the case, I would submit. Landrigan has changed it. Now the Petitioner has the burden of demonstrating, and the district court has the discretion in deciding, whether or not the State court decision in his case were objectively unreasonable. Unless he can do that, he's not entitled to a Federal court evidentiary hearing. In this particular case, I would respectfully submit that the court of appeals did make several factual findings. Now, the court of appeals in a public court is not going to explicitly title such findings as the superior court might, such as stating, these are my findings of fact, these are my conclusions of law. But in resolving Mr. Miller's case, I would respectfully submit that the Washington District Court of Appeals made a number of factual determinations along the way, which ultimately led to the court of appeals holding its legal determination that he was not prejudiced. The court of appeals determined, assuming, again, assuming arguendo, that even if counsel had admitted the bat into evidence, this wouldn't change the fact. The fact, not the holding, that Miller hadn't mentioned the bat to police earlier. The fact that the police saw no bat at the scene, that no other witnesses saw a bat, and Miller failed to demonstrate that the alleged bat could be connected in any way to the victim by way of fingerprints or something of that nature, those are facts. They led to the holding that he was not prejudiced as a result. Now, this Court held previously in Totten v. Merkel that no evidentiary hearing was required for habeas claims that could be resolved based on the State court record. I think the record is clear that Mr. Miller developed a substantial State court record in the Washington Court of Appeals. This case can and should be resolved based on the existing State court record without a an evidentiary hearing. Therefore, based upon Schwerer v. Landrigan and this Court's holding in Lambert v. Blodgett, this Court should find that the district court did not err in dismissing Mr. Miller's habeas petition on the merits without an evidentiary hearing or when applying the presumption of correctness to the Washington Court of Appeals factual findings. Unless the panel has any other questions, I'm prepared to stand down. I don't believe that any of us has any more questions. Thank you. Thank you, Your Honor. And you used up all your time. It will give you a minute for rebuttal if you want it. Okay, Your Honor. I would just say two things. I cited to the Court cases. In Washington State, appellate courts cannot make findings of fact. They are precluded from doing so by the Washington State Constitution, and I cited a number of cases. And the other point I wish to make is that this notion that a determination that it wouldn't have changed the outcome as a finding of fact is absurd. That is not a historical finding. That's not historical fact. That's not he was on the street, he wasn't on the street, it was dark, it was light. But, Counselor, our case authority seems to blur the line between historical findings of fact and the mixed determination. You know, in Lambert, we say forging the precise distinction between a factual and a mixed determination has proven difficult and contentious. And it says that the underlying inferences that the Court draws in determining the bottom line is a question of fact. So that's my question. The underlying inferences, I would agree with that in the sense that you look at things like how many officers were there, how many officers would have an opportunity to see this gun, how many officers say they saw the gun, say anything about it. Those are underlying things. But the United States Supreme Court, since Strickland in 1986, has said prejudice is not a finding of fact. Even if we assume that's true, that there were no findings of fact that could be deferred to, were in the district court's opinion or the district court's or the reporting recommendation, was there any deference to any findings of fact? The district court said, I must defer to the findings of fact. But he didn't say what they were. I agree. So then where did he defer to them? Even if he erred in saying he must defer to them, where did he defer to them in his ruling? I can't tell you what was in his mind. But I can tell you that he stated the right test for giving a hearing. I didn't ask you what was in his mind. I asked you where in the ruling did he actually defer to any findings of fact in making his decision. He said, I must defer to the findings of fact. Therefore, I will not grant an evidentiary hearing. That is all he said. And that he said after he had said, these are the two criteria for deciding whether to hold an evidentiary hearing in the district court. Did he say that the court of appeals decision was not an unreasonable application of the Strickland test? No, he didn't say that. He didn't say that. He said, I have to defer to their fact-finding process. And there was no fact-finding process. What was his ultimate ruling? I'm trying to find it. He said ER 161 through 63 is the second order. He referred back to the report and recommendation, and it says that the magistrate judge thoroughly reviewed each of the Petitioner's allegations of ineffective assistance in line with the clearly established Federal law and correctly concluded that the State court's adjudication did not involve an unreasonable application of the Strickland standard. Yes, Your Honor. That's not a finding of fact. Exactly. So I'm asking you where in that ruling did he defer to the State court finding of fact? Well, earlier in that ruling, a few sentences up, he said, I must defer under the ADA to the State court's fact-finding process. And when you are deciding under the AEDPA whether or not there's been one of those two criteria, which here would be unreasonable application of U.S. Supreme Court law, first, you would have to know what the facts are. You can't decide whether it's an unreasonable application of Strickland when you don't know what the facts are. Counsel, ultimately, the district court adopted the magistrate judge's report, correct? Well, yes. I think so. Did she make any analytical errors? I know you don't agree with the bottom line, but did she make any fundamental analytical errors in the method by which she went about considering the claims? I think, if I understand your question right, she correctly took the Strickland test, she correctly took the AEDPA test, and she said, you don't meet prejudice and the court of appeals determination, the State court of appeals determination that you don't meet prejudice is not an unreasonable application. So that's the correct AEDPA test. But you can only do that if you know what the facts are. And nobody is willing to give him an opportunity to show what the facts are. Thank you, counsel. We understand your position. The case just argued is now submitted. The next case on the docket this morning is
judges: Alarcon, Graber, Rawlinson